# IN THE COURT OF APPEALS OF IOWA

No. 23-1927
Filed August 20, 2025

**IN THE INTEREST OF K.H.**

**STATE OF IOWA,**
        Respondent-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Stuart P. Werling, Judge.

The State appeals the district court's order restoring a petitioner's firearm rights under Iowa Code section 724.31.  **AFFIRMED.**

Brenna Bird, Attorney General, and Sarah Jennings, Assistant Attorney General, for appellant.

Garth M. Carlson of Gomez May LLP, Davenport, for appellee (until withdrawal), and K.H. of Davenport, self-represented appellee.

Considered without oral argument by Greer, P.J., Sandy, J., and Mullins, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**MULLINS, Senior Judge.**

Six years after his involuntary commitment for mental-health and substance-use problems, K.H. filed a petition seeking restoration of his right to possess a firearm. *See* Iowa Code § 724.31 (2023). The State opposed his request, but the district court was persuaded by K.H.'s "honest and straightforward" testimony that he has progressed beyond his diagnoses and no longer presents a danger to public safety. On our de novo review, we reach the same conclusion.

I.      **Background**

In September 2017, just before his sixteenth birthday, K.H.'s mother and stepfather filed a pair of applications asking the district court to hospitalize their son for mental-health and substance-use treatment. *See* Iowa Code §§ 125.75(1), 229.6(1) (supp. 2017). According to their supporting affidavits, K.H. had been running away from home, making suicidal remarks, and experimenting with marijuana. The court found probable cause for both applications and committed K.H. to a psychiatric unit, where he was diagnosed with adjustment disorder and cannabis-use disorder. Within a few days, K.H. was deemed stable for release. The court ordered him to continue treatment on an outpatient basis.

K.H. would later testify that his brief hospitalization helped set "[his] mind right." He applied for a job the same day he was released, and he promptly complied with his outpatient treatment regimen. In mid-October, a mental health provider reported that K.H.'s "symptoms ha[d] improved" since his hospitalization, that "he appear[ed] to have gained insight," and that he was no longer a threat to himself or others. So, the district court discharged K.H. from his mental-health commitment. Following his successful completion of a six-week substance-use

curriculum, the court discharged K.H. from his substance-use commitment as well. Both civil commitment cases were dismissed by December 2017.

Over the next six years, K.H. continued to make positive strides. According to his testimony in this case, he required no further treatment for his mental health or substance use. He stopped running away from home. He remained continuously employed. He became a father to four young children. And he maintained an almost-unblemished criminal record, receiving one misdemeanor charge for possession of marijuana while traveling through Kansas in August 2022. There is no dispute that K.H. continues to consume marijuana—which he purchases legally from an Illinois dispensary—on an "occasional" basis.

Now, K.H. would like to acquire a gun, "just for legal protection." Federal law prohibits "any person . . . who has been committed to a mental institution" from possessing a firearm or ammunition. 18 U.S.C. § 922(g)(4). However, our state code permits individuals who are disqualified on this basis to petition the district court for restoration of their rights. See Iowa Code § 724.31 (2023). In April 2023, K.H. filed a petition under section 724.31, asserting he no longer suffered from the mental impairment or substance disorder that led to his commitments in 2017. He also filed supporting statements from his mother and stepfather, who wrote that K.H. had "outgrown" his diagnoses and had become a "very responsible" adult. The State opposed K.H.'s request.

The district court held an evidentiary hearing, where K.H. testified in a manner that both the court and the assistant county attorney commended as "honest," "straightforward," and "well-spoken." Finding "no evidence to contradict"

his claims of rehabilitation, the district court granted K.H.'s petition for restoration of firearm rights. The State appeals.

## II. Standard of Review

When the district court denies a petition under section 724.31, appellate review is de novo. *Id.* § 724.31(4). Our supreme court has assumed without deciding that the same standard applies when the State appeals an order restoring firearm rights. *In re N.F.*, 17 N.W.3d 667, 677 (Iowa 2025). At the parties' invitation, we apply that standard here.[1]

De novo review requires "an independent evaluation of the totality of the circumstances as shown by the entire record." *Id.* (citation omitted). Our role is to "examine the quality of the evidence offered . . . and decide for ourselves" whether it satisfies the standard for restoration of firearm rights. *In re A.M.*, 908 N.W.2d 280, 285 (Iowa Ct. App. 2018). That said, we still give weight to the district court's factual findings—especially those concerning the credibility of witnesses. *N.F.*, 17 N.W.3d at 677; *accord A.M.*, 908 N.W.2d at 283.

## III. Discussion

Under section 724.31, any "person who is subject to the disabilities imposed by 18 U.S.C. § 922(d)(4) and (g)(4) because of an order or judgment that occurred under the laws of this state" may petition the district court to restore their firearm

---

[1] We note that a more deferential standard would not impact our decision to affirm the district court's order.

rights. Before granting such a petition, the court must "receive and consider evidence" concerning:

> a. The circumstances surrounding the original issuance of the order or judgment that resulted in the firearm disabilities imposed by 18 U.S.C. § 922(d)(4) and (g)(4).
> b. The petitioner's record, which shall include, at a minimum, the petitioner's mental health records and criminal history records, if any.
> c. The petitioner's reputation, developed, at a minimum, through character witness statements, testimony, and other character evidence.
> d. Any changes in the petitioner's condition or circumstances since the issuance of the original order or judgment that are relevant to the relief sought.

Iowa Code § 724.31(3). A petitioner's rights must be restored if the court "finds by a preponderance of the evidence that the petitioner will not be likely to act in a manner dangerous to the public safety and that the granting of the relief would not be contrary to the public interest." *Id.* § 724.31(4). The State contends K.H. failed to carry that burden here, challenging both the form and sufficiency of the evidence he offered in support of his petition.

We start with the State's challenge to the form of K.H.'s proof. It first argues that relief must be denied "as a matter of law" because K.H. did not introduce recent "mental health records" or an "official criminal history." Although section 724.31(3)(b) instructs the district court to consider a petitioner's mental health and criminal history records, it also features important qualifying words: "if any." This language reflects a "commonsense view that there may well be periods of time for which no records exist." *N.F.*, 17 N.W.3d at 679. Naturally, if the petitioner "hasn't had criminal problems, there won't be any criminal records." *Id.* And if the petitioner "hasn't had mental health problems, . . . there may be no care

records." *Id.* In those circumstances, a petitioner's credible testimony can suffice to establish his rehabilitation. *See id.* at 680.

K.H. testified that he received no further mental health treatment after 2017, so it makes sense that he offered no mental-health records. A recent evaluation might have supported his petition, but he was not required to obtain one before seeking relief.[2] *Id.* ("[A]lthough some states' statutes require a recent mental health evaluation, Iowa's statute does not."). And while K.H. does have a limited criminal history, he detailed that history in his testimony. The State does not meaningfully dispute that K.H.'s rap sheet would show a single misdemeanor conviction for which he received a fine. Under the circumstances of this case, we decline to foreclose relief simply because K.H. failed to adduce a "record" of his criminal history.

The State also contends that the statements filed by K.H.'s mother and stepfather do not satisfy the reputation-evidence requirement of section 724.31(3)(c) because they are not notarized and because their authors did not testify at the hearing. Our supreme court rejected this same argument in *N.F.,* where it held a petitioner's letters of support fulfilled the statutory requirement despite the fact that they were unnotarized and uncorroborated by testimony. 17 N.W.3d at 680 (noting that if the State "had wanted to subpoena the authors for the hearing, it could have"). Here too, we conclude that K.H.'s letters suffice for the "minimum" reputational proof required by section 724.31(3)(c). The State's

---

[2] K.H. testified that he attempted to schedule a mental-health evaluation in advance of the hearing, but he declined to follow through because it "cost a lot of money."

concerns go to the weight of the letters, not their legal adequacy as proof of reputation.

Having resolved these threshold issues, we turn to the sufficiency of K.H.'s evidence. According to the State, K.H. failed to prove he has overcome the "serious mental illness and substance abuse issues" that required his hospitalization in 2017. It emphasizes the lack of any "objective source of information from which to evaluate K.H.'s mental status over the [past] six years." It questions the impartiality of K.H.'s letters of support. And it argues that K.H.'s conceded marijuana use and recent misdemeanor conviction necessarily undermine the district court's conclusion that he has become "a productive and generally law-abiding citizen." We disagree on all fronts. Although the evidence in this case is not extensive, K.H. offered credible testimony to establish his fitness to possess a firearm under each of the statutory factors.

We first consider the circumstances surrounding K.H.'s commitments. *See* Iowa Code § 724.31(3)(a). K.H. testified that he began running away from home due to resentment for his mother's rules and a desire to be "around [his] friends." Notably, he denied ever expressing a suicidal intent, contrary to the allegations in his mother's 2017 affidavit.[3] But we need not resolve that conflict. Even assuming K.H. made suicidal statements in 2017, the record is devoid of any evidence that he took steps to harm himself or others. *See N.F.*, 17 N.W.3d at 678 (noting the record showed no "actual suicide attempts" or other firearm-related violence by the

---

[3] To K.H.'s credit, none of the reports filed in K.H.'s civil commitment cases suggest he made suicidal statements to his mental health providers. K.H.'s stepfather asserts in his letter of support that his wife exaggerated K.H.'s suicidal condition "to teach him a lesson."

petitioner); *cf. A.M.*, 908 N.W.2d at 285 (finding the circumstances of a petitioner's hospitalization weighed against restoration of rights where he assaulted three people during a self-destructive effort to obtain a shotgun). There is certainly no indication he seeks to do so today.

Next, we consider K.H.'s mental health history. *See* Iowa Code § 724.31(3)(b). His failure to muster affirmative evidence on this point is not inconsistent with a full recovery. *See N.F.,* 17 N.W.3d at 679. As our supreme court has noted, when a petitioner claims they have no recent mental health records because they've experienced no recent mental health problems, the court is faced with "a *credibility question*." *Id.* The district court credited K.H.'s testimony that he has maintained a clean bill of mental health since 2017. We adopt that finding here. This case is unlike those in which the petitioner's assurance of stability was belied by evidence that they had abandoned prescribed treatment, *see A.M.*, 908 N.W.2d at 285–86, or misled providers to secure a positive report, *see In re N.S.*, 13 N.W.3d 811, 824 (Iowa 2024).

Section 724.31(3)(b) also directs us to account for K.H.'s criminal record. To that end, K.H. openly testified that he was charged with misdemeanor possession in 2022 after Kansas authorities found two grams of marijuana in his car. The stop occurred while he was driving to Texas with his children and a friend. K.H. pled guilty to the offense and received a fine. He was not arrested, nor is there any evidence to suggest his offense involved violence or weapons. In further candor, K.H. also testified that he continues to consume marijuana on an "occasional" basis today. He purchases the drug from a dispensary in Illinois, "right across the bridge" from his Davenport home. While the record does not otherwise

disclose the manner or frequency of K.H.'s use, he did note that he has passed all of his workplace drug tests. K.H. also explained that he has never acted violent, paranoid, or in a manner that is unsafe to others while under the influence of marijuana.

K.H.'s possession charge and marijuana use weigh against his restoration of rights, not in favor. It is never in the public interest for guns and drugs to mix. Indeed, both state and federal law prohibit unlawful drug users from possessing a firearm. *See* Iowa Code § 724.8B; 18 U.S.C. § 922(g)(3). However, when we narrow our focus to the question at hand—whether K.H. is entitled to relief from his *mental-health* disqualification—we cannot conclude that his misdemeanor conviction and recreational marijuana use are dispositive. Neither of these facts suggest that K.H. continues to struggle with the symptoms of adjustment disorder that required his involuntary hospitalization in 2017. And even though K.H. was also committed for treatment of cannabis-use disorder, his testimony suggests that he now consumes marijuana in a safe and moderated manner.[4]

Turning to the reputation evidence, *see* Iowa Code § 724.31(3)(c), we find it significant that the same two affiants who sought K.H.'s civil commitment now agree that he is fit to possess a firearm. *Cf. N.S.*, 13 N.W.3d at 823 (Iowa 2024)

---

[4] We assume without deciding that K.H.'s involuntary commitment for treatment of a substance-use disorder pursuant to Iowa Code chapter 125 constitutes an independent disability for purposes of 18 U.S.C. § 922(g)(4). The district court made no such finding in K.H.'s 2017 substance abuse case, and our research suggests the question has yet to be resolved by any state or federal court. *See N.F.*, 17 N.W.3d at 681 n.4 (declining to decide "whether a chapter 125 proceeding can serve as a basis for a federal firearms disability"). We do note that the federal Bureau of Alcohol, Tobacco, Firearms, and Explosives has interpreted the statutory words "committed to a mental institution" to include "commitments for other reasons, such as for drug use." 27 C.F.R. § 478.11 (2023).

(finding this factor weighed against relief where none of the family members who had applied for the petitioner's commitment submitted a statement supporting restoration of his firearm rights). K.H.'s mother writes that he has "a total different outlook on life." According to his stepfather, K.H. "really learned from his childhood mistakes." Both assure that he is not inclined toward violence. The State urges us to disregard these letters as "biased . . . opinions," but we cannot reasonably discredit the parents' recent support while simultaneously crediting their original affidavits. K.H.'s reputation evidence favors restoration.

Lastly, we consider the changes in K.H.'s "condition or circumstances" since the time of his commitments. Iowa Code § 724.31(3)(d). The district court gave substantial weight to this factor, finding that since his release from the hospital, K.H. has "completely changed his outlook on life and . . . has become a responsible adult who provides for and cares for his children." We agree with that appraisal. K.H. credibly testified that he has overcome his mental health diagnoses. He has learned to parent, he has held several jobs, and— importantly—he has "weathered these life stressors without any tumult." *See A.M.*, 908 N.W.2d at 287.

On our review of the entire record, we find that K.H. established by a preponderance of the evidence that he "will not be likely to act in a manner dangerous to the public safety" and that restoration of his firearm rights "would not be contrary to the public interest." Iowa Code § 724.31(4). Through his credible testimony, K.H. showed that he has no intention of using a firearm to harm himself or others. He has demonstrated the maturity and responsibility required to safely possess a weapon. And while we do not condone his marijuana use, we find that

the evidence of illicit conduct in this case is not strong enough to compel the denial of relief.  Gun ownership, for better or worse, is not conditioned on a perfect record. *See, e.g.*, Iowa Code § 724.26(2) (prohibiting firearm possession by misdemeanants only when convicted of a "crime of domestic violence").

## IV.  Conclusion

For the foregoing reasons, we affirm the order of the district court restoring K.H.'s firearm rights pursuant to section 724.31.

**AFFIRMED.**